OPINION OF THE COURT
Jay Stuart Dankberg, J.
The holding in this case evinces that landlord should have been given the 17th century warning of Miguel de *2 Cervantes that “delay always breeds danger” (Don Quixote, part I, book IV, ch 2; see, also, Shakespeare, King Henry VI, act III, scene 2, “delays have dangerous ends”).
Issues discussed in this decision include: once a demand for rent has been made, does it remain effective forever? Is there some point at which mere passage of time can make a once proper demand no longer viable as a predicate for a summary proceeding? Did the Legislature intend that a demand for rent remain valid for a period in excess of two years?
A review of statutory and case law does not disclose any direct answer to these questions; accordingly, this case, of “stale demand”, is of first impression.
In this case, after landlord personally demanded rent in November, 1980, there was an unexplained delay in commencing litigation until March, 1983 — more than 28 months later. At first blush, seemingly, this proceeding could be placed in the legal niche created by Judge Irving Younger’s Gramford determination (Gramford Realty Corp. v Valentin, 71 Misc 2d 784). That case and its progeny (see, e.g., Mt. Nebo Baptist Church v Myers, NYLJ, April 10, 1979, p 10, col 5; Dedvukaj v Madonado, 115 Misc 2d 211; 269 Assoc. v Yerkes, 113 Misc 2d 450; Maxwell v Simons, 77 Misc 2d 184; 142 Equities v Stokes, NYLJ, Sept. 12, 1973, p 20, col 1; Antillean Holding Co. v Lindley, 76 Misc 2d 1044) establish what has been called the “stale rent” cases. Under such holdings, rent sought in a summary proceeding would be considered “stale” — and not result in a possessory judgment — based upon passage of time and demonstration of injury or prejudice resulting therefrom (see, e.g., 177 East 90th St. v Devine, NYLJ, March 30, 1982, p 6, col 1; Thunderbird Realty Co. v Ahn, NYLJ, Nov. 19, 1981, p 11, col 1; Western Hotels Co. v Ramsay, NYLJ, Dec. 20, 1979, p 10, col 4; Glen Cove Housing Auth. v Tillman, NYLJ, May 27, 1977, p 13, col 1; Moskowitz v Simms, NYLJ, April 28, 1975, p 18, col 1; City of New York v Betancourt, 79 Misc 2d 907).
However, as has been aptly observed, “[w]ith maturity * * * first blushes can ripen into ‘red faces’ ” (Ratner v Drucker, 79 Misc 2d 216, 218). This case does not fall into *3 the judicial “pigeonhole” of Gramford (supra) or its progeny. If Gramford established a “stale rent” theory, this proceeding involves a “stale demand”.
RPAPL 711 (subd 2) requires a landlord to prove that, prior to beginning a nonpayment proceeding, either a personal demand for the rent was made, or, in the alternative, a written three days’ notice was served (in the same formal manner as a petition). Clearly, the statutory language indicates a preference for a demand to be personally made. However, the statute sets no time constraint between making the demand and commencement of a summary proceeding. Is one reasonably to be implied?
FACTS
Tenant ceased paying rent on a rent-controlled apartment in November, 1980, alleging a breach of the warranty of habitability. The rent was demanded personally by landlord’s president, Zenon Kramarchuk, Jr., around the middle of November. While there was some testimony that a second demand may have been made about December, 1980 or January, 1981, when the apartment was painted, after such a long passage of time the witness was uncertain as to what was then said. Accordingly, and especially since it would not affect this decision, such testimony is not credited. Thus, there was no credible testimony of any other demand for rent made after November, 1980, by Kramarchuk or any other officer, agent or employee of landlord. No monthly rent bills or statements were sent; no “three days’ notice” was served.
In fact, Kramarchuk was most emphatic in his testimony that he and tenant have not spoken to each other for almost three years before the trial. Such noncommunication resulted from the direction of a “court” referee at the Institute for Mediation and Conflict Resolution (a branch of the Criminal Court of the City of New York).
Landlord did not commence this nonpayment proceeding until March, 1983, 28 months after making demand. No explanation was proffered as to the lack of a personal demand by anyone other than Zenon Kramarchuk or as to the absence of a three days’ notice.
Actually, the only attempt at explanation was given during “direct” examination of landlord’s president. He *4 then claimed that this lawsuit was not sooner started because of “other actions” pending between the parties. However, on cross-examination, he admitted that there were no other actions or proceedings in 1981 or later that prevented landlord from bringing suit earlier than March, 1983. Landlord’s delay of 28 months is thus unexplained.
At the end of landlord’s prima facie case, and again after trial, tenant moved to dismiss this proceeding on two grounds. First, a demand for rent cannot remain effective as a base upon which to bring a summary proceeding more than two years later. Second, the proceeding is for “stale rent”.
HISTORY OF SUMMARY PROCEEDINGS AND DEMAND
Historically, the only means for a landlord to regain possession of premises from a defaulting tenant was by common-law action of ejectment. Many safeguards were developed to protect tenants from inadvertent forfeiture of an estate in the land. For example, to re-enter for nonpayment of rent, a landlord had to plead and prove a common-law demand for the rent — an actual demand for the exact amount due, on the very day that it became due, before sunset, and on the premises where the rent was payable (Moore v Coughlin, 127 App Div 810, 812; Hotel Concord v Callaghan, 161 Misc 764, 765; Wolcott v Schenk, 16 How Prac 449, 451). The action of ejectment became so overburdened with procedural devices — like the common-law demand — that it became “an expensive and dilatory proceeding which in many instances amounted to a denial of justice” (Reich v Cochran, 201 NY 450, 453-454; 2 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], § 993).
In 1820, the Legislature devised the statutory scheme of summary proceedings to remedy this situation and provide landlords with a simple, expeditious and inexpensive means of regaining possession of premises (L 1820, ch 194; see Reich v Cochran, supra, p 454; Cotignola u Lieber, 34 AD2d 700, 701; Haskell v Surita, 109 Misc 2d 409, 413). However, creation of summary proceedings to replace ejectment actions eliminated not only archaic, oppressive procedures (like the complexities of a common-law demand); in the intent to be “summary” many procedural *5 rights due a party sued in any other lawsuit are also circumscribed. For example, today, a tenant’s time to answer a petition’s allegations is limited to five days (RPAPL 732, subd 1); a trial date must be established within three to eight days after answer (RPAPL 732, subd 2); disclosure is by leave of court, not as of right (CPLR 408); and there is no joinder, interpleader, third-party practice or intervention except by leave of court (CPLR 401). These modifications profoundly restrict procedural remedies available to tenants in summary proceedings; those that remain should be scrupulously honored.
The 1820 concept of summary proceedings was transferred to the Code Civ Pro (L 1880, ch 245), then to the Civil Practice Act (L 1920, ch 925), and finally, in 1963, was placed within RPAPL article 7 (L 1962, ch 142), where it remains today. But the Legislature made no substantial changes in the concept of summary proceedings by these enactments; it merely simplified and rearranged the provisions (2 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], § 993). Thus, the continuity of the summary proceeding in New York from 1820 is quite striking, and decisions reached under the earlier codifications often retain their vitality under RPAPL article 7.
Turning to the history of the demand requirement specifically, the same consecution can be seen from the statute of 1820 through the provisions of RPAPL 711 (subd 2). The 1820 law reads (L 1820, ch 194, § 1), in pertinent part: “in the case of a proceeding for non-payment of rent * * * there shall have been a demand of such rent, or three days notice, in writing, by the person or persons entitled to such rent, to the person or persons owing the same, requiring the payment of the said rent, or the delivery of possession of the premises, to be served in the same manner as last provided [for service of process].”
Compare the language of the modern counterpart, RPAPL 711 (subd 2): “[A special proceeding may be maintained when] the tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held, and a demand [for] the rent has been made, or at least three days’ notice in writing requiring, in the alternative, the payment of the rent, or the possession of the *6 premises, has been served upon him as prescribed in section 735.”
One cannot but be struck by the chain of reasoning of this legislative requirement of a demand for the rent over some 164 years. It is clear that the demand intended by the Legislature in 1820 as a prerequisite for litigation to commence is the same requirement presently embodied in RPAPL 711 (subd 2).
CONSTRUCTION OF STATUTE
Since the remedy of summary proceedings is entirely the creation of statute, strict compliance with all statutory provisions is demanded (Reich v Cochran, supra; Radlog Realty Corp. v Geiger, 254 App Div 352, 354; Handshke v Loysen, 203 App Div 21; Beach v McGovern, 41 App Div 381; Tolman v Heading, 11 App Div 264, 266; 300 West Realty Co. v Wood, 69 Misc 2d 580, affd 69 Misc 2d 582; Blozevich v Tasber, 116 NYS2d 801; 28 Mott St. Co. v Summit Import Corp., 64 Misc 2d 860, 863; Goldman Bros. v Forester, 62 Misc 2d 812, 814).
Further, since the remedy of summary proceedings was given to landlords for use against tenants, the statute is in derogation of the common-law rights of tenants. Each provision accordingly — including the requirement of a proper demand — must be strictly construed so as to avoid termination (Matter of Flewwellin v Lent, 91 App Div 430, 432; Solack Estates v Goodman, 102 Misc 2d 504, 505, app dsmd 78 AD2d 512; Fisch v Chason, 99 Misc 2d 1089, 1090; 1550 Broadway Assoc. v El-Pine Drinks, 96 Misc 2d 707, 709; Zisser v Bronx Cigar Corp., 91 Misc 2d 1025, 1027; Fitzgerald v Washington, 80 Misc 2d 861, 864; Markese v Cooper, 70 Misc 2d 478, 480; Roosevelt Nassau Operating Corp. v Camy Holding Corp., 50 Misc 2d 906, 907).
DEMAND — WHEN MADE
When must a demand for rent be made? How long does it remain effective once made? What is the purpose of requiring a demand to be made?
Since the statutory demand requirement was not intended by the Legislature to be the same as the common-law ejectment demand, it need not be made on the exact *7 date that the rent is due (Hotel Concord v Callaghan, 161 Misc 764, supra; Zinsser v Herrman, 23 Misc 645). However, since there must be compliance with the statute, it has been held that the demand must be made after tenant has defaulted in payment of rent but before a proceeding is brought (Meyers v Knights of Pythias Bronx Temple Assn., 194 App Div 405; Glanz v Schaefer, 102 NYS 518).
DEMAND — HOW LONG GOOD AND PURPOSE
These cases, however, do not discuss the question of how long a demand for rent remains effective. The best approach would be to look first to any legislatively declared purpose for the original enactment of a demand requirement. Unfortunately, in 1984, demonstrable proof of the 1820 Legislature’s intent in codifying a formal demand requirement is scarce or nonexistent, but well-reasoned case law provides guidance.
Perhaps the clearest statement of purpose for the demand requirement was made in 1898 by the Appellate Term, First Department, in Zinsser v Herrman (supra, p 647 [decided under Code Civ Pro]): “The purpose of such [summary] proceedings is to enforce a forfeiture of an interest in real property incurred by the tenant by reason of his failure to comply with a condition upon the performance of which the continuance of his estate is predicated. In view of the grave consequences following such a forfeiture, it has always been the policy of the law to insist that he who proposes to take advantage of it should seek out the person against whom it is sought to establish the forfeiture, and to demand of him a performance of the condition in unequivocal language, and under circumstances which would place that person immediately in a position to satisfy the demand and save his estate.”
Under Zinsser (supra), therefore, a demand would only remain effective so long as tenant remained in a position to immediately cure the default of which he is informed by the demand, thereby preventing the bringing of summary proceedings.
In Schwartz v Weiss-Newell (87 Misc 2d 558, 561), the court relied upon Zinsser (supra) in formulating guidelines to test the sufficiency of a rent demand. “A proper demand *8 for rent * * * at a minimum * * * should clearly inform the tenant of the particular period for which a rent payment is allegedly in default and of the approximate good faith sum of rent assertedly due for each such period.”
In Trustees of C.I. Mtge. Group v NYILR Ltd. (NYLJ, Dec. 8, 1978, p 6, col 3), the Appellate Term, First Department, found that a general demand for rent due on a commercial premises was sufficient even though the demand did not specify the amount of rent due. The court, critical of Schwartz (supra), stated the following regarding the purpose of the demand requirement (p 6, col 3): “The Legislature has not prescribed specific requirements for a proper demand pursuant to RPAPL 711(2). The demand is merely to place the tenant on notice of the pendency of an action due to the tenant’s default. Absent evidence of a contrary legislative intent, the demand requirements of RPAPL 711(2) should not be encumbered by judicially promulgated technicalities.”
In support of such reasoning, the court relied on Rasch (2 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], § 1094) which, in turn, cites as authority the case of Durant Land Improvement Co. v Thomson-Huston Elec. Co. (2 Misc 182).
It is suggested, in retrospect and for the following reasons, that such language in Trustees (supra) was not intended to apply to all situations and that the underlying rationale has receded with time. First, the “demand” defense raised by the commercial tenants was part and parcel of a general “shotgun” group of “technical defenses asserted”, quickly discarded from consideration.
Second, the Appellate Term might have used such language because those were commercial tenants (rather than residential occupants) as to whom the “Gramford” defense does not apply (see, e.g., 28 Market St. Corp. v Gallo, NYLJ, Jan. 20, 1978, p 11, col 5; United Artists Corp. v No. 731 Seventh Ave. Rest., 75 Misc 2d 717, 719; see, also, Matter of Estate of Birnbaum v Yankee Whaler, 75 AD2d 708, affd 51 NY2d 935 [failure to make rent current, after demand, justifies leasehold termination of commercial tenant]).
Third, the Durant case (relied on by Rasch), as was noted in Schwartz (supra, p 561), should be limited to a case in *9 which the amount of rent was previously judicially determined and where both parties had actual notice of the amount so determined.
Fourth, Rasch, in the March, 1984 Cumulative Supplement to section 1094 (2 Rasch, NY Landlord & Tenant, Summary Proceedings [2d ed], § 1094), has changed the interpretation previously given the Durant case — Rasch now acknowledges the unique circumstances oí Durant and concludes: “[i]t would seem better and proper practice that in the usual situation, the demand for rent should name or specify the amount due.” Ironically, in seeming support of this proposition, Rasch cites only Schwartz v Weiss-Newell (supra).
Finally, it is submitted that Schwartz did not create any “judicially promulgated technicalities”. That court, in articulating a guideline to test the sufficiency of a demand, was following statutes and appellate cases over 80 years old (i.e., Tolman v Heading, 11 App Div 264, supra; Zinsser v Herrman, 23 Misc 645, supra). Indeed, it was held that there are no “magic words” to be used in making the demand (any such judicially required “magic words”, of course, could be construed to be a “judicially promulgated technicality”). In the words of Schwartz v Weiss-Newell (supra, p 560): “in the actual words used in the demand, it is not necessary that the precise sum of rent due be demanded * * * [but] some specified sum of money must be demanded * * * Subdivision 2 of section 711 of the Real Property Actions and Proceedings Law * * * clearly requires that the demand be for ‘the rent’, meaning the particular rent involved, or, at least, the landlord’s good faith assertion of the rent deemed due at the time of the request”.
Accordingly, it is respectfully suggested that the purpose of the 164-year-old statutory demand requirement is not merely to place a tenant on notice of the pendency of a summary proceeding; that is the purpose of the notice of petition. As this court recently held (Park South Assoc. v Clipper, NYLJ, Dec. 12, v1983, p 17, cols 2, 3-4): “One of the essential elements of proof in a nonpayment proceeding is that there has been a demand for payment of the rent *10 concerning which a lawsuit is about to be commenced. The reason is obvious — a potential litigant is entitled to notice that a claim is made; an opportunity should be given to pay the amount claimed without the costs, inconveniences and conceivable hazards associated with a lawsuit. This is especially important in a landlord-tenant relationship, where the known dangers involved in a summary proceeding include the contingency of being evicted from one’s home, based upon disputes which have been as little as eight cents or one dollar (Nelson v. Kaufman, N.Y.L.J., November 24, 1978, p. 12, col. 1 [App. T., 1st Dept., n.o.r.]).”
A more limited interpretation of the RPAPL 711 (subd 2) demand requirement would tend to render the statute nugatory and superfluous. “A judgment must not rewrite a statute, neither to enlarge nor contract it * * * Construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction” (Frankfurter, Some Reflections on the Reading of Statutes [1947], p 13).
Clearly, the Legislature, by RPAPL 711 (subd 2) and its predecessor statutes since 1820, intended not an unreasonable demand — such as was required at common law — but a reasonable demand, one which places a tenant in position to make a prompt tender of rent and avoid summary proceedings by advising dates and amounts of the good-faith claimed default. The dates and amounts in the demand must be reasonably related to those upon which the summary proceeding may eventually be brought in order to serve as the base of such lawsuit.
However, even assuming, arguendo, that Trustees of C.I. Mtge. Group (NYLJ, Dec. 8, 1978, p 6, col 3) correctly states the sole purpose of the demand requirement, then the facts of this case do not meet the criteria stated therein. A demand for rent made in November, 1980 cannot and does not, as a matter of law or fact, put a tenant “on notice of the pendency of an action due to the tenant’s default” which is not brought until March, 1983. After 2% years, a tenant has a right to conclude that the landlord either had lost interest in bringing a summary proceeding or had forgiven the rent — in either circumstance, a new demand would be required just to remind tenant of the months and amount claimed and of the impending onset of litigation.
*11 Moreover, a year after Trustees (supra) was determined, the same court decided Western Hotels Co. v Ramsay (NYLJ, Dec. 20, 1979, p 10, col 4). There, landlord hotel sought to recover 18 months rent. Personal oral demands were made and followed up by monthly rent statements containing the amount claimed. Disregarding its one-year earlier criticism, the court found that “the demands [met] the minimum requirements described in Schwartz v. Weiss-Newell * * * that they ‘should clearly inform the tenant of the particular period for which a rent payment is allegedly in default and of the approximate good faith sum of rent * * * due for each such period.’ ”
Thus, although there is language in Western Hotels (supra) from Trustees of C.I. Mtge. Group (supra), the Appellate Term clearly applied the Schwartz v WeissNewell test in finding that personal demands combined with regular monthly rent bills satisfied RPAPL 711 (subd 2).
However, the instant case is readily to be distinguished from Western Hotels (supra) since here landlord did not demand the rent after the initial demand in November, 1980, either personally or by monthly statement. Thus, by March, 1983, when it brought this summary proceeding, landlord’s 2V2-year-old demand had grown stale. This contrasts with the personal demands made in Western Hotels, renewed each month by a written rent bill. In Western Hotels, moreover, the amount and period of rent stated in the last demand was reasonably related to the rent sought in the nonpayment proceeding subsequently commenced. Yet even under those circumstances, the appellate court felt that the equities involved in a summary proceeding seeking IV2 years’ rent required that a bifurcated judgment be entered — containing possessory and nonpossessory (money only) consequences.
Therefore, like the legendary phoenix arisen from the ashes, while the holding in Schwartz v Weiss-Newell (supra) was criticized for a while, the guidelines contained therein have arisen from the criticism, renewed as an accurate test of the sufficiency of a rent demand, at least as to residential tenancies.
*12 DECISION
By synthesizing Zinsser v Herrman (23 Misc 645, supra) and Schwartz v Weiss-Newell (87 Misc 2d 558, supra), this court concludes that the purpose of the demand requirement of RPAPL 711 (subd 2) is to place a tenant in position to avoid forfeiture by informing him of the approximate good-faith amount of rent claimed and the particular period for which he allegedly is in default. This is to enable him to promptly remedy the default and prevent litigation.
A demand will remain effective as a predicate for a summary proceeding only so long as the amount of rent and particular period of default for which the demand is made bears a reasonable relationship to those claimed in the subsequent lawsuit. In other words, a demand remains effective for a reasonable period of time.
In the instant case, initially the demand, made in November, 1980 for that month’s rent, was an effective one — it informed tenant of the amount of rent and period of default, and placed him in a position to cure the default and avoid a summary proceeding brought thereon. Landlord, however, did not bring a lawsuit at that time. With the passage of each succeeding month, the total amount of rent and periods of default increased, until by March, 1983, rent for 29 months was owed. By March, 1983, landlord’s demand for one month’s rent made in November, 1980 — and without any communication since that date regarding payment of rent — was no longer sufficient to place tenant in a position to promptly remedy the default and avoid this proceeding, brought for 29 months of accrued rent. The initial demand for one month’s rent no longer bore a reasonable relationship either to the dates or amount of rent involved in this inexplicably long delayed litigation.
Thus, the demand for rent made by landlord’s president in November, 1980 was not a viable predicate upon which to base this nonpayment summary proceeding, brought 28 months later. By March, 1983, the once proper demand had become stale — brittle with age. A stale demand is the equivalent of no demand.
Based upon the above, therefore, since landlord has failed to demonstrate a proper demand for rent — a long-established prerequisite to the maintenance of a summary *13 proceeding — this proceeding must be dismissed (RPAPL 711, subd 2; see Tolman v Heading, 11 App Div 264, supra; Oberlies v Oliva, 45 Misc 2d 533; Fleisher v Wolff, 91 NYS2d 427; Schwartz v Weiss-Newell, supra).
Since the landlord’s claim for rent is dismissed, tenant’s counterclaims (which are intertwined with landlord’s claim) are also dismissed, without prejudice to renewal as counterclaims if landlord sues again and without prejudice to be raised as claims-in-chief, as tenant may be advised.
INTENT — GOOD FAITH
In dismissing this case, the court also finds, based upon the totality of testimony, that landlord acted intentionally in waiting 28 months from the time of initial demand until service of process.
This case is not the first between these parties but is part of a pattern of litigation — in fact, according to landlord’s uncontradicted testimony, prior to 1980 there was a prior summary proceeding brought for 26 months’ rent. Nothing further concerning that case (not even the index number) was brought up during the instant trial or in posttrial memoranda of law. However, that case certainly did not succeed in securing the eviction of this tenant in possession of a rent-controlled apartment; nor does this one. Note is also taken of tenant’s complaints concerning lack of repairs.
Normally, “ ‘it must be assumed that * * * conduct mirrors * * * intentions, and [one] must be presumed to intend the natural consequences of [one’s] acts * * * [Inaction] may reasonably be deemed to be intended to cause [tenant] to waive * * * rights under the Rent Law as well as force [him] to vacate.’” (Matter of Belnord Holding Corp. v Joy, 73 AD2d 549, 550, affd 52 NY2d 945.)
While normally there is an assumption of good faith in relations between landlords and tenants (Park South Assoc. v Clipper, NYLJ, Dec. 12, 1983, p 17, cols 2, 4, supra), any presumption of good faith in bringing a summary proceeding fades after a 2V2-year wait.
Accordingly, based upon the above, it is found that landlord has not acted in good faith in delaying the start of this lawsuit for almost 2xh years.
*14 Landlord should heed Shakespeare’s words well: “O, sir, to wilful men, the injuries that they themselves procure must be their schoolmasters” (King Lear, act II, scene 4).
EFFECT OF DISMISSAL
In spite of landlord’s sloth in bringing this lawsuit, this decision has no Draconian effect.
Parenthetically, it is observed that the landlord, although not able to evict the defaulting tenant by this lawsuit, is not without possible remedy to collect the moneys it claims tenant owes.
Several months have passed between the bringing of the lawsuit and the time of trial. Since the petition was never amended (landlord neither moved on notice for such relief nor brought a second proceeding, to be consolidated into this case), this litigation did not involve any claim for rent past March, 1983. Accordingly, landlord may commence a proper lawsuit (summary proceeding or plenary action) for “current rent” post-March, 1983, as it may be advised, provided it does so in proper fashion.
As to any claims landlord may have for moneys owed pre-March 31, 1983, based upon the purpose of the summary proceeding statute — by waiting such a lengthy time in bringing the instant summary proceeding, and by not proceeding in good faith — the court feels that landlord has misused the remedy of summary proceedings for preMarch 31, 1983 claims. It has forfeited its privilege to utilize such remedy (see CCA 1810). Accordingly, the dismissal of the petition is with prejudice to landlord’s ability to resue in a summary proceeding — but without prejudice for the landlord to commence, as it may be advised, a proper plenary lawsuit regarding any claims for November, 1980 — March, 1983 rent.
LEGISLATION
Finally, this decision is being written not only to explain the court’s determination, but also in the hope that it will receive the attention of the Legislature.
Surely, intentional delay of nonpayment summary proceedings is an abuse of “the system”, especially as regards residential occupants whose tenancies are ostensibly otherwise protected by rent regulatory statutes. Judges are *15 constrained to avoid “judicial legislation” (Matter of Thomas, 216 NY 426, 429). Therefore, legislative correction is necessary to rectify this deficiency in the statutory scheme regarding summary proceedings that are inexplicably not brought for two, three or more years; such proceedings are “by no stretch of the imagination summary in nature” (142 Equities v Stokes, NYLJ, Sept. 12, 1973, p 20, col 1, supra).
This proceeding and recent decisions discussed in it “cry out” to the Legislature to enact a shortened Statute of Limitations for summary proceedings. Whether it be the three-month period suggested in Gramford Realty Corp. v Valentin (71 Misc 2d 784, supra), 142 Equities v Stokes (supra) and Maxwell v Simons (77 Misc 2d 184, supra); the six-month limitation contained in Glen Cove Housing Auth. v Tallman (NYLJ, May 27, 1977, p 13, col 1, supra); or whatever period absent good cause shown — a “shortened Statute of Limitations merely serves the purposes of all Statutes of Limitations — putting disputes to rest and requiring suits to be brought while the evidence is fresh and available.” (Continental Metals Corp. v Municipal Warehouse Co., 92 AD2d 477, 478.)
The ability to bring suit in a regular plenary action to collect rent moneys justly due would still be available — it is that we must be ever mindful to avoid consequences of inexcusable inactivity causing prejudice. As stated almost 2,000 years ago by the Roman poet, Lucan (The Civil War, Book I): “Delay is ever fatal to those who are prepared.”
Or, in the words of the famous maxim: “justice delayed is justice denied”.
Settle judgment dismissing the proceeding as above stated.