OPINION OF THE COURT
Victor J. Alfieri, Jr., J.
The instant matter was commenced by service of a notice of petition and petition essentially alleging the respondents to have held over in the occupancy of the premises at 108 Laurel Road, New City, New York, after the expiration of service of a 30-day notice. (RPAPL 711 [1]; Real Property Law § 232-b.) The parties have supplied the court with memoranda of law concerning the issues which they believe are determinative in this proceeding. On April 19, 1994 the parties appeared before this court and stipulated certain facts on the record. The respondents move to dismiss claiming that the 30-day notice signed by petitioner’s attorney fails to comply with RPAPL 711 (1), and that a 10-day notice was required pursuant to RPAPL 713 (5).
Prior to the commencement of the respondents’ tenancy on September 1, 1992, the premises were owned by Eugene D’Alessio, Sr. and Eugene D’Alessio, Jr. who were then involved in a forfeiture proceeding wherein the United States of America sought forfeiture of the premises. The forfeiture action commenced on or about March 22, 1991 pursuant to 21 USC § 881 (a) (6) and (7) wherein the United States of America sought civil forfeiture of the premises in question, and termination of the rights of the D’Alessios. A notice of pendency was filed in the County Clerk’s office of the County of Rock-land on March 22, 1991. The D’Alessios were served with the summons and verified complaint on April 2, 1991.
At the time of the commencement of the proceedings pursuant to 21 USC § 881 as noted above, petitioner Union State Bank and Dime Savings Bank held mortgages on the premises. (By assignment of October 27, 1993 Union State Bank acquired the interest of Dime Savings Bank. Therefore, Dime is not a party to this proceeding.) As noted above, on September 1, 1992 the respondents entered into possession of the premises by virtue of an oral month-to-month tenancy with the D’Alessios.
The November 30, 1992 consent order and judgment of *52 forfeiture entered in the United States District Court for the Southern District of New York provided that the premises be forfeited to the United States of America and be delivered by the D’Alessios to the United States of America "vacant * * * no later than December 31, 1992 * * * at which time any tenancy rights in the defendant-in-Rem shall be deemed terminated”.
The United States Marshall collected rent from the respondents up to July of 1993. There have been no payments to the United States Marshall since. Furthermore, rent is not sought, nor is rent an issue in these proceedings on stipulation of the parties.
On January 6, 1994 a quitclaim deed from the United States Department of Justice, United States Marshall Service, as grantor, was executed to the Union State Bank as grantee, conveying all the right, title and interest of the United States Government in the premises to the Union State Bank.
Thereafter, Isabel Becker, Esq., attorney for Union State Bank executed and had timely served upon the respondents a "Notice to Quit” dated January 25, 1994. Thereafter, on March 9, 1994 this proceeding was commenced against Bill Werner and Marianne Capuano the tenants in possession of the premises, by personal service of the notice of petition and petition. The respondents move to dismiss claiming that Ms. Becker was not the proper party to issue the 30-day notice, and the proceeding should have been commenced pursuant to RPAPL 713 (5).
The issue to be determined by this court is twofold: (1) whether the petitioner’s attorney, Isabel Becker, is the proper party to execute the notice to quit pursuant to Real Property Law § 232-b; and (2) does RPAPL 713 (5) apply to the instant proceedings requiring the exhibition of the deed to the respondents and a 10-day notice as a condition precedent to commencement of an action to evict.
This court agrees with the petitioner’s contention that the "rights of any tenants at the premises would be deemed terminated” upon entry of the order of forfeiture of November 30, 1992. The respondents entered into possession of the premises after a valid notice of pendency was filed at the County Clerk’s office of the County of Rockland wherein the premises is situated, giving notice to the world of the forfeiture proceedings which were then being undertaken by the United States Government. Clearly, the rights of the respon *53 dents were subject to the forfeiture action. (See, e.g., Mechanics Exch. Sav. Bank v Chesterfield, 34 AD2d 111.) Furthermore, this court also agrees with the respondents that the decision in Seigel v Kentucky Fried Chicken (108 AD2d 218, affd 67 NY2d 792), relied upon by respondents, is and should be limited to the facts contained therein.
Dealing first with the Seigel issue, the Seigel Courts, both at the Appellate Division and the Court of Appeals, relied heavily upon the fact that there existed a printed lease entered into by the petitioner and respondents. The lease specifically provided that the notice of termination was to be given by the "landlord” (see, 108 AD2d; supra, at 221; 67 NY2d, supra, at 793). The lease in Siegel provided that the notice must be served by a specifically designated person, a fact upon which the Siegel Court heavily relied: "that certain of the rights and immunities arising thereunder may be exercised and enjoyed by either the 'Landlord or Landlord’s agents’, and where it elsewhere designate^] a named third party, other than [the attorney serving the notice to quit], as the landlord’s attorney, ['to serve notices’] it appears only reasonable that a forfeiture provision calling for cancellation of the lease upon only three days’ written notice emanating specifically from the 'Landlord’ should be strictly construed against its drawer to require unequivocal notice by either the landlord himself or his authorized agent, accompanied by proof of the latter’s authority to bind the landlord in giving of such notice”. (Seigel v Kentucky Fried Chicken, 108 AD2d, at 221 [emphasis added].) Putting it succinctly, the Court of Appeals held that "[u]nder such a lease notices of default and of termination signed not by the owner or the attorney named in the lease, but by another attorney with whom the tenant had never previously dealt, were insufficient and the tenant was entitled to ignore them as not in compliance with the lease provisions concerning notice”. (Seigel v Kentucky Fried Chicken, 67 NY2d, at 794 [citations omitted].)
Further distinguishable from the facts at bar where the instant case involves an oral month-to-month tenancy and there is no written lease between the parties, the Seigel case (supra), on the other hand, specifically involved a provision for a five-day notice to cure "alleged breaches of the underlying covenants”. (Seigel v Kentucky Fried Chicken, 108 AD2d, at 219.) The lease provided for an initial five-day notice to cure defaults, and upon the inaction of the respondents to cure any *54 such defaults a further three-day notice of cancellation was provided for.
The said three-day notice of cancellation, as well as the five-day notice which preceded it were signed by an attorney for the landlord who was not named as the authorized party in the lease. Since Seigel (supra), it has been held by the Appellate Division, First Department, that "notice signed by [an] attorney [was] legally sufficient where landlord’s signature [was] not required by lease or statute”. (Yui Woon Kwong v Sung Po Eng, 183 AD2d 558, 559, citing Beau Arts Props. Co. v Whelan, NYLJ, Jan. 12, 1990, at 21, col 2.) In Kwong (at 560) it was held that as there was no written lease "between the parties requiring that the demand be signed by the landlord, as in Seigel v Kentucky Fried Chicken * * * RPAPL 711 (2) does not require that the demand be signed by the landlord. Therefore, the three-day demand notice in the case at bar was not rendered legally insufficient because it was signed by the landlords’ attorney and not by the landlords”.
In the opinion of this court, it is clear that the Seigel holding turned upon specific lease provisions which delineated the manner in which notices were to be served and the parties who were authorized to serve same. Siegel (supra) in essence was a lease construction case and not an explanation of who may execute and serve section 232-b notices.
The primary issue to be resolved in the case at bar on this motion to dismiss is whether the respondents are tenants within the traditional meaning of section 711 (1), or whether no landlord/tenant relationship between the petitioner and respondents existed and the 10-day notice provisions of RPAPL 713 (5) apply. In the latter case, a special proceeding may only be maintained after a 10-day notice to quit has been served upon the respondent. Section 713 (5) provides a basis for eviction where a 10-day notice has been served and, "[t]he property had been sold in foreclosure and either the deed delivered pursuant to such sale, or a copy of such deed, certified as provided in the civil practice law and rules, has been exhibited to him. ” (Emphasis supplied.)
Petitioner argues that the rights of the tenant at the premises would be deemed terminated at the time of the order of November 30, 1992, and as noted above, this court agrees with that statement. However, the rights may very well have been terminated, but the possession and occupancy of the tenant could not be terminated without notice and due pro *55 cess. (See, e.g., Richmond Tenants Org. v Kemp, 753 F Supp 607 [ED Va 1990].) Notice and due process can only be ensured by adhering, in the opinion of this court, to the statutory provisions of the RPAPL relating to the serving of a 10-day notice and the subsequent summary proceeding for which such notices are condition precedents. (RPAPL 713 [5]; 2 Rasch, New York Landlord and Tenant — Summary Proceedings § 35:8 [3d ed].) Richmond involved the forfeiture pursuant to the same statutory provisions utilized by the Government in the case at bar, and held that the removal of the tenants from public leaseholds without a hearing violated due process except in extraordinary circumstances. The court particularly recognized that a "notice and an opportunity to be heard would certainly further minimize th[e] risk [that the premises may be seized in error]”. (Richmond Tenants Org. v Kemp, supra, at 610.) While Richmond involved a removal prior to forfeiture, the requirement of notice is crucial in any case where tenants are sought to be removed. The notice in the case at bar is required by section 713 (5).
In sum, the termination of the tenants’ rights pursuant to the November 30th order cannot in and of itself give rise to immediate eviction without the petitioner following the requirements of the RPAPL, i.e., the giving of statutory notice, the service and filing of a petition and notice of petition and the hearing which follows. Such requirements must be strictly construed. (See, e.g., Zenila Realty Corp. v Masterandrea, 123 Misc 2d 1 [1984].) The issue before this court on this motion to dismiss, whether the tenants are section 711 (1) holdovers or section 713 (5) occupants, must be resolved in favor of the latter, in the opinion of this court.
The instant situation is analogous to that in which a mortgage foreclosure takes place and the mortgagee is the successful bidder at the sale, thereafter acquiring title. Section 713 (5) requires as a condition precedent to maintaining an action to evict the occupant, that the deed be exhibited to the occupants and a 10-day notice be served upon the occupant.
In the case at bar, the landlord’s interest was "cut off’ by the forfeiture proceeding which is in the nature, in the opinion of this court, of a mortgage foreclosure, which was a sale absolute and terminated the interest of the landlord D’Alessios and the tenants. Thereafter, the Government, becoming the "successful bidder” at the time of the sale (i.e., by the order of Nov. 20, 1992), sold (assigned by stipulation and order of June 7, 1993) its interest to mortgagee Union State Bank *56 which in turn perfected its fee ownership interest by obtaining an assignment of the interest of Dime Savings Bank thus extinguishing the mortgage lien of Dime on the premises. Thus having acquired the right, title and interest of the United States Government and the interests of the Dime Savings Bank, Union State Bank became the new owner in fee, successor to the D’Alessios by mesne transfers. While this court cannot find any cases on point, it cannot be logically contradicted that the manner in which the petitioner acquired title in the case at bar is the functional equivalent of the manner in which one acquires title at a foreclosure sale. The acquiring of ownership in this manner requires a proceeding pursuant to section 713 (5). (See, 2 Rasch, New York Landlord and Tenant — Summary Proceedings § 35:9 [3d ed]; 89 NY Jur 2d, Real Property — Possessory Actions, § 6.)
There not having been notice served in compliance with RPAPL 713 (5) this court is without jurisdiction to issue a warrant of eviction, and the respondents’ motion is granted and the petition is dismissed without prejudice.