WILLIAM C. MORRIS, Respondent, v MONIT MANAGE-MENT, LTD., et al., Appellants. [635 NYS2d 845] —Judgment unanimously modified on the law and facts and as modified affirmed without costs in accordance with the following Memorandum: Plaintiff commenced this declaratory judgment action against his landlord and its agent (defendants), who asserted counterclaims based upon plaintiff's alleged breach of the lease. Following a nonjury trial, Supreme Court made extensive findings of fact and issued a judgment, from which defendants appeal.

In 1969 plaintiff sold a shopping center he had developed to the New Hartford U.S.I.F. Corporation (USIF), and simultaneously leased the property back from its new owner. According to section 3.02 of the lease, plaintiff was required to pay fixed annual rent of $491,000 (later reduced to $465,000) and "additional rent", defined in the lease as 15% of "total minimum guaranteed rentals and percentage of overage and rentals" above an agreed upon amount (currently $798,003.14). The lease was amended in 1971 to provide that no additional rent is owed for rent derived from "new construction" in which the landlord does not contribute "at least a portion of the costs." The amendment further provides that new construction shall include "any alteration or change in existing structures" that exceeds $10 per square foot in cost. In 1972 USIF transferred its interest in the shopping center to Arlen Realty, which sold the property six years later to Canadian Four State Holdings, the current landlord and one of the defendants herein.

At trial, it was undisputed that plaintiff made numerous alterations to the property and erected several new buildings over the past two decades. The landlord received notice of only a few of those projects and contributed money to none. As a result, the base upon which additional rent is computed has eroded and plaintiff has retained a greater percentage of the money received from subtenants. Defendants alleged in their counterclaim that, in failing to provide notice of construction projects, plaintiff thereby deprived the landlord of its right to contribute pursuant to the amended lease. Defendants also al-

leged that plaintiff has wrongfully excluded various common costs paid by subtenants from the rent roll so as to further reduce the source of income from which additional rent is determined. The court disagreed, finding, *inter alia,* that (1) plaintiff need not provide notice to or obtain consent from the landlord before building new structures or remodeling existing buildings; (2) the landlord has no right to contribute to the costs of new construction or alterations; (3) income received by plaintiff from subtenants for common costs, including taxes and insurance, may be excluded from the additional rent roll; and (4) the landlord's failure to deposit insurance premiums received from plaintiff in an interest-bearing account constitutes a breach of the lease.

The court erred in finding that plaintiff may engage in new construction and alterations without the landlord's knowledge and consent. Article 14 of the lease provides that plaintiff must obtain the landlord's written consent before undertaking "capital improvements" costing more than $20,000. In interpreting article 14, the court concluded that it applies only to alterations to buildings that existed when the lease was signed in 1969. According to section 14.01 of the lease, however, capital improvements include "repairs", which are defined in section 13.01 as including "alterations and additions." Also, in defining "improvements", section 2.1 (c) refers to buildings "at any time hereafter erected, constructed, or affixed" to the land. Thus, the court's finding is contrary to the clear and unambiguous terms of the lease. Although we conclude that plaintiff failed to comply with article 14, we further conclude that laches bars an award of damages to defendants on their breach of contract counterclaim *(see, Dwyer v Mazzola,* 171 AD2d 726; *Burns v Egan,* 117 AD2d 38, 40-41, *appeal dismissed* 68 NY2d 806, *lv denied* 69 NY2d 602).

The court also erred in finding that the landlord waived its right to contribute to the costs of new construction and alterations. Although no landlord has contributed to construction costs in the past, there is no credible evidence that any landlord intentionally relinquished that right for the remainder of the 60-year lease *(see, Jefpaul Garage Corp. v Presbyterian Hosp.,* 61 NY2d 442, 446; *see generally,* 57 NY Jur 2d, Estoppel, Ratification and Waiver, § 74). The court relied upon testimony of USIF's former agent, Howard Geoghegan, who averred that, in signing the 1971 amendment, he was waiving the landlord's right to contribute to new construction costs. The landlord's right to contribute, however, did not exist prior to 1971; it arises from the 1971 amendment itself. Moreover, in

several letters admitted at trial, plaintiff himself acknowledged the landlord's right to contribute. Thus, we conclude that the court erred in refusing to adopt defendants' proposed findings of fact numbered 2, 2a, 2b, 2c, 2d, 2e, 4, 5, 13, 31 and 93, and we find them as proposed. The remaining contentions of defendants are without merit.

We, therefore, modify the judgment on appeal by declaring that, pursuant to article 14 of the lease, plaintiff must provide notice to the landlord of proposed capital improvements and obtain consent from the landlord to such improvements; the landlord has a right to contribute to new construction and alterations costing more than $10 per square foot; and the landlord, as defendants concede on appeal, must contribute at least 15% of the costs to new construction and alterations in order to receive additional rent from the improved premises. (Appeal from Judgment of Supreme Court, Oneida County, Tenney, J.—Declaratory Judgment.) Present—Green, J. P., Pine, Fallon, Callahan and Doerr, JJ.