OPINION OF THE COURT
Thomas Rainbow Morse, J.
While at first glance this is merely an action to recover rent allegedly due for the period from May through September of 2006, this small claims case raises several significant issues which should be addressed. Rather than render a concise one-page opinion, a longer explanation of the court’s rationale and the limits of this court’s purview will be provided in the hopes that more than a simple judgment will flow from this decision wherein the court finds plaintiff landlord Cathaline Robinson[1] is entitled to recover some back rent.
Findings of Fact
On March 31, 2005, the defendant tenant signed a one-year written lease for $425 per month on an apartment co-owned by the plaintiffs. When that agreement lapsed, the tenant remained “lease-less” in the apartment on a month-to-month basis until she left on October 31, 2006. While it is clear from the landlord’s testimony that her tenant fell behind in rent as early as June 2005, it is also apparent she accepted a small shortfall through January 2006 when the total back rent owed by the tenant amounted to $84. That amount increased dramatically, however, when the tenant paid no rent for the next two months and only $300 towards her rent for April 2006. Nonetheless, the landlord did not demand the $1,234 due at that point nor did she commence a summary eviction proceeding.[2] Instead, she allowed the tenant to remain in the property and accepted various amounts of rent until Halloween of 2006.
Six weeks after Ms. Robles left the apartment, the landlord began this small claims action. The complaint she filed seeks to recover $1,734 alleging that “FROM MAY - SEPT 2006 PLAINTIFF HAS MONEY DUE FOR RENT AT 950 BAY *870 STREET APT 14. ”[3] Importantly, the landlord did not sue for any rent owed prior to May 2006 or after September 2006. Since the court is holding the landlord to the time frame set forth in her lawsuit, it is also substantially just for the court to consider the entire amount of rent due during that specific period.[4]
[5]Ap-plying that analysis, it is clear from the evidence before the court that the tenant underpaid her rent by $750 for those months. Accordingly, Ms. Robinson is entitled to a judgment in that amount.
Substantial Justice Delayed
While the landlord filed her action in a timely manner,[6] the record clearly shows that she was much less prompt in pursuing the claim. Pursuant to the practice of the Rochester City Court, Civil Division, on the day the landlord filed her small claims action she selected February 6, 2007 for appearance before a hearing officer to arbitrate this matter. The clerk’s office promptly sent notice to the tenant which was received at her place of employment within a week. Even though the landlord had chosen the hearing date, she filed a letter with the court six weeks later requesting an adjournment. Her request was denied. The tenant appeared on the scheduled date but the landlord did not. On February 7, 2007, the hearing officer rendered a default decision in favor of the tenant.
The landlord then waited over a month before contacting an attorney regarding the filing of an order to show cause to vacate the default. Thereafter, she waited another three months until she signed the affidavit in support of the motion. The order to show cause was not filed with the court until more than three additional months had elapsed.
Next, a City Court judge scheduled argument of the motion for October 18, 2007 — 253 days after the default was entered. On the return date, however, counsel for the landlord withdrew the motion because the tenant had apparently not been served. *871 A second City Court judge signed a second order to show cause on November 13, 2007 returnable 15 days later. That case was also withdrawn because the tenant still had not been served. The next affirmative court action taken by the landlord regarding her default was nine months later when she signed an exact copy of her 2007 affidavit. A third City Court judge signed an order to show cause two days later on August 29, 2008. Before that motion was to be heard in court, a fourth City Court judge signed yet another order to show cause to be argued on September 19, 2008 — more than 18 months after the landlord’s default. A fifth City Court judge granted the motion to vacate on that date and directed both parties to appear before this court on the merits of the claim. Amazingly, it took the landlord 558 days from her default to secure the court appearance during which the judge vacated the default and scheduled the case for a hearing two weeks out.
The Equitable Doctrine of Laches
As noted by the Court of Appeals, laches is “an equitable bar, based on a lengthy neglect or omission to assert a right and the resulting prejudice to an adverse party.”[6] Although an appellate judge found this court improperly invoked the doctrine of laches when the case was first heard,[7] the procedural history of this case clearly highlights the need for legislative reform.
Had the landlord sought this money as an ancillary request for relief in a timely summary proceeding to evict the defendant, her tenant would have been entitled to raise the defense of laches since statutorily her summary action “answer may *872 contain any legal or equitable defense, or counterclaim.”[8] The tenant could also have raised such a defense had she been sued in the regular civil part of this court. Yet, the landlord did not bring either action in April 2006, when her tenant still lived in the apartment and presumably was more cognizant of the current status of her rent payments as well as the physical condition of the apartment. Instead, the landlord waited over a year and a half from the date the tenant was first significantly short on her obligations to commence this small claims action for back rent. Once in a sheltered arena where the defense of laches was unavailable to the tenant, the landlord delayed another 18 months before this case was first heard on the merits. While the law allows for such a result, the question remains: is such an outcome substantially just?
In communities where there is significant poverty, transient tenancies subject to summary proceedings are the rule rather than the exception.[9] As this case demonstrates, the longer a landlord waits to pursue a prior tenant for back rent, the greater the likelihood of problems relating to proper service and a tenant’s possible default in cases involving substitute service. While the record is not clear where the tenant resided during that period, throughout the almost 19 months between the landlord’s default and her first appearance on the merits of her lawsuit (which included at least three hiatuses of several months with no apparent activity on the landlord’s part) the tenant worked at the same nursing home located less than two miles from this courthouse. What possible public purpose is fostered by such delay? If a tenant was allowed to raise laches as a defense in small claims court, a court would be permitted to answer that question[10] and decide whether the tenant had demonstrated any prejudice due to the delay.
The Need for a Written Rent Receipt
This case also illustrates another troubling aspect of many landlord-tenant cases — the apparent presumption that courts should accept each of the myriad creative accounting customs *873 adopted by landlords. Summary eviction petitions before this court routinely lump “added rent” sums (such as late fees, attorney’s fees and utilities) with past-due rent. They also denominate as “rent” undisclosed security deposits or damage estimates. Perhaps the most pernicious patterns, however, are those in which current payments are applied toward amounts past due without acknowledging the portion so allocated. Such facts often come to light only when a court is called upon to hold a hearing in cases with such revolving landlord ledgers. At that point, the parties are usually unprepared to provide the court with reliable proof assigning specific payments to particular periods under the rented agreement. It is rare that a party provides this court with copies of the written rent receipt required by New York law in all residential leases.[11]
During the hearing in this case, the court admitted a ledger from the landlord purporting to show how she applied money received from her tenant.[12] Critically absent on the issue of past-due rent, however, were the landlord’s copies of written rent receipts required by Real Property Law § 235-e. That statute provides that
“(a) Upon the receipt of rent for residential premises in the form of cash or any instrument other than the personal check of the tenant, it shall be the duty of the landlord to provide the payor with a written receipt containing the following:
*874 “1. The date;
“2. The amount;
“3. The identity of the premises and the period for which paid; and
“4. The signature and the title of the person receiving the rent.”[13]
While the ledger was offered to show monthly payments made, it doesn’t suitably apprise the court of the time frame covered by each payment. While the court does not doubt the testimony of the landlord regarding how she applied the payments, there is no proof before the court that the tenant shared her opinion. There is no proof that there was any meeting of the minds concerning application of the payment to their verbal contract to lease residential premises. Had the landlord complied with her statutory responsibility to identify on a written receipt her allocation of the funds received each month to specific periods of occupancy this problem would have been solved. In this day of readily available carbonless-copy receipt books, failure to note at the bottom of a rent receipt how much of the money received goes to current rent and the amount applied to a specific prior period is inexcusable.
Significantly, such uncertainty is the precise problem Real Property Law § 235-e was designed to alleviate. Its proponents prescribed it as a means of “avoiding any discrepancies between landlords and tenants.”[14] In urging the Governor to approve the bill, Attorney General Robert Abrams suggested that the law “affords tenants who pay their rent by cash increased protection in the form of a legible payment record to protect against a landlord’s possible harassment or faulty record keeping.”[15] This view was echoed three years later by the Consumer Protection Board which observed that since “[t]enants facing eviction for non-payment must prove full payment of rent to keep their apartments . . . [the] bill would provide the necessary documen *875 tation rather than leave tenants dependent on personal, and often inadequate, record keeping.”[16]
This landlord duty under Real Property Law § 235-e to note the rental time frame represented by the tenant’s payment contrasts with the general common-law rules that “the debtor may direct the application of his payments, but if he fails to do so, then the creditor is permitted to apply the payments as he sees fit” and the “presumption . . . that a payment is to be applied to that portion of the debt first becoming due.”[17] The statute implicitly recognizes that with all forms of payment other than a personal check, the tenant will not have a negotiated instrument to present to the court indicating how the payment was to be apportioned. Thus, this court finds such a statutory departure in the context of residential leases is reasonable given recognized disparities between most landlords and tenants.
Consistent with the decision to rent property as an investment, most landlords understand they are subject to a number of special tax, health and safety rules. If they rent to low-income tenants, they also find themselves subject to various additional government regulations. Such responsibilities are part of the cost of doing business for a residential landlord. On the other hand, many tenants, especially those on low or fixed incomes, rent because their financial situation precludes them from owning a home. Most tenants are conscientious when it comes to paying rent. There are a few, however, who seem content to cycle through housing court by being chronically short on their rent payments. Assigning the landlord the responsibility for noting that part of the payment made is for past-due rent is not unreasonable in such situations, especially when the payment made approximates the sum due for one month’s rent. The question then arises: what remedy does a tenant have or should the court employ when a landlord fails to comply with Real Property Law § 235-e?
The Attorney General considered the absence of “a specific penalty for a landlord’s breach of the created duty” in the statute to be a defect, but urged that the problem be remedied later.[18] Unfortunately, after the passage of almost 30 years and two amendments expanding the scope of Real Property Law § 235- *876 e,[19] we are still without statutory sanctions for a landlord’s failure to provide a written receipt.[20] During that time, this statutory vacuum has been filled by court decisions imposing various judicial remedies.[21]
One court has held that failure to comply with the statute “may be considered in weighing the testimony of the landlord . . . and where the landlord has clearly violated Real Property Law § 235-e, the doubt should be resolved in favor of the tenant.”[22] Another found that “where the only evidence before the court is the contradictory statements given under oath by the respective parties, and where the landlord has clearly violated section 235-e of the Real Property Law, the doubt should be resolved in favor of the tenant.”[23] A third judge has ruled that a “rebuttable presumption in favor of the tenant as to payment of rent is an appropriate judicial response to a violation of Real *877 Property Law Section 235-e by the landlord.”[24] One judge awarded back rent finding there had been substantial compliance with the statute as the landlord gave the tenant monthly statements and the tenant did not deny owing rent or contradict the landlord’s testimony.[25] Although none of these remedies have yet to be considered by an appellate court, the issue was recently briefed before the Appellate Division, First Department. The court seems to have implicitly acknowledged the statutory violation while the judges found it unnecessary to consider any remedy for the landlord’s “misconduct”[26] due to the tenant’s conflicting testimony.
In each of those cases, however, both parties appeared. In this case, while the tenant did testify in October 2008, she defaulted when the case was reheard following the landlord’s successful appeal. Thus, there is no testimony before the court contesting the application of the payments made. The tenant has also failed to offer proof as to habitability issues as she did when she testified previously. In addition, there are no written rent receipts pursuant to Real Property Law § 235-e in evidence. Therefore, on the record before it, this court finds it is substantially just to give the tenant credit for the amount of money the landlord admits was paid during the period in question while applying those funds only to the period covered by this lawsuit.
Conclusion
This case highlights an all too common dilemma for citizens seeking sensible solutions from a court system that can only be resolved through targeted legislative action. How can our neighbors use a small claims court as the people’s court where substantial justice is the goal when case law precludes judges from recognizing equitable defenses such as laches? How can laches be recognized as a statutory defense in a summary eviction proceeding based on failure to pay back rent or in the regular civil part of the court and yet not be allowable in a small claims action wherein the landlord seeks the same relief?[27] While the legislature has already recognized the need for a small *878 claims court to be able to “condition the entry of judgment upon such terms as the court shall deem proper,”[28] it is now time to give the court the tools it needs to accomplish substantial justice by making it clear that during the proceeding the court can consider certain defined equitable claims, counterclaims and defenses.
Moreover, after 30 years of differing judicial approaches imposing sanctions for the widespread failure of landlords to provide statutorily required written rent receipts and the needless chaos such conditions create in courts across the state, it is time to make a meaningful adjustment to Real Property Law § 235-e to provide landlords with an incentive to comply with this 30-year-old consumer protection law. Otherwise, how can courts claim to fully protect the rights of both landlords and tenants, most of whom appear pro se?
While many tenants have college or advanced degrees, some do not. Instead, a number of our poorest neighbors have not finished high school. Nonetheless, they come to court armed *879 with a sense of right and wrong and expect a system that will allow them a meaningful day in court. Over the past 11 years, litigants before this court have often expressed concern that they would have had the witnesses or documentary proof needed to prevail if only the case had been brought earlier. While the case law may be clear and the statutory scheme self-evident, it doesn’t mean the present state of affairs is just or that it is not in need of reevaluation.
“Substantial Justice” — the standard of review in small claims court — must mean something. A small claim is not simply a civil suit for $5,000 or less! For those litigants who want all the rights and responsibilities provided for in the Civil Practice Law and Rules, City Court already has regular civil jurisdiction for lawsuits valued at $15,000 or less. For those not represented by counsel who want a more user-friendly forum where the court is not “bound by statutory provisions or rules of practice, procedure, pleading or evidence,”[29] small claims is the place to be. Small claims court originated during the great depression “to insure swift and equitable poor man’s justice in the State. In the words of a commentator at the time, the government had at last recognized ‘the plight of the poor litigant. . . whose demand, though small, was just and vital.’ ”[30] As noted by Professor Siegel, “Small Claims Court may be the only contact many people will ever have with the court system.”[31] The court system and the legislature have an obligation to New Yorkers to make sure they feel they’ve been fully accorded the substantial justice to which they are statutorily entitled.
In hopes of fostering spirited discussion regarding the small claims issues raised by this case, the court respectfully suggests some possible solutions:
*880 Amend the Small Claims Acts to Allow the Court to Consider Limited Equitable Claims, Counterclaims and Defenses
The legislature should amend the various uniform local court acts to make it clear that judges in small claims cases can consider equitable claims, counterclaims and defenses[32] (e.g. laches, quantum meruit,[33] clean hands[34]) only in the context of awarding a money judgment. This could be accomplished by adding the following sentence to the end of section 1804 in the various local court acts:[35]
“In every small claims action, the judge or arbitrator may consider equitable claims and counterclaims including, but not limited to, unjust enrichment and quantum meruit, and equitable defenses including, but not limited to, laches and equitable estoppel within the context of awarding a money judgment pursuant to section 1801 of this act.”
As crafted, this provision would fulfill the legislative promise to provide substantial justice while precluding a judge or arbitrator from straying from the substantive law or considering equitable relief such as an injunction[36] or declaratory relief.[37]
*881 Amend Real Property Law § 235-e to Provide a Meaningful Sanction for Noncompliance
The legislature should finally provide for a statutory remedy and insure consistency in application of its provisions statewide by establishing a six-month statute of limitations on actions for past-due rent in cases where the landlord has failed to provide appropriate written rent receipts[38] by adding the following language to Real Property Law § 235-e: “(c) Any action for residential rent under this or any other provision of law wherein the landlord has failed to provide the written receipts required above must be commenced within six months of the alleged default.” This amendment would serve as an incentive to provide such proof of payment since landlords who fully comply with Real Property Law § 235-e would be able to avail themselves of the full six-year statute of limitations.[39]
Establish Logical and Consistent Burdens of Proof Regarding Unpaid Rent
The legislature should amend the court acts and Real Property Actions and Proceedings Law regarding allocation of the burden of proof in unpaid rent cases. The laws should assign to the tenant the burden of proving why rent wasn’t paid during the three months immediately preceding filing of the action. For periods earlier than that, the laws should require the landlord *882 to demonstrate why he or she is entitled to rent owed from four or more months before judicial intervention was sought.[40] For instance, RPAPL 711 could be amended as follows:
“3. In any proceeding to recover residential rent under this or another provision of law, as long as the landlord has provided written rent receipts pursuant to Real Property Law § 235-e, the tenant shall bear the burden of proof regarding rent for the three months immediately prior to the filing of the action and the landlord must demonstrate entitlement to rent for any earlier period.”[41]
Such a statewide allocation of responsibility would bring consistency to proceedings now subject to various judicial remedies. This approach would also assist courts in distinguishing between those tenants attempting to live rent-free by playing the system and those tenants who have fallen on hard times. Importantly, by allowing landlords to explain why they accepted less than a month’s rent, this rubric would acknowledge the good will and caring exhibited by the majority of landlords, like those in this case, who try to work with their tenants until they can get back on their feet.
After due deliberation and careful consideration of the evidence before the court, taking into account the demeanor and *883 nonverbal communication of each witness[42] and consistent with the court’s responsibility under section 1804 of the Uniform City Court Act “to do substantial justice between the parties according to the rules of substantive law,” it is hereby held that plaintiff Schouten is in default and that claim is dismissed. And it is further held that plaintiff Robinson may have a judgment for the portion of rent for the months of May through September 2006 which was not paid by the defendant tenant. And it is further ordered that the plaintiff is entitled to a judgment for $750. And it is further ordered that, in addition to any other copies provided, the clerk’s office is to furnish the plaintiff with a certified copy of this decision. And it is further ordered that given the service of process history of this case (including the defendant’s default when this case was heard on appeal and her failure to appear when this matter was heard on remand) and consistent with this court’s authority under UCCA 1805 and CPLR 2201, the judgment ordered in this case is stayed until 45 days after the plaintiff has served the certified copy of this order directly into the hands of the defendant. And it is further ordered that defendant pay the plaintiff the amount of $750 within 30 days of receiving hand delivery of the certified copy of this order to allow the defendant to pay the amount ordered without a judgment being entered. And it is further ordered that if payment is not made within 30 days of the hand delivery of the certified copy of this order to the defendant, the judg *884 ment shall be entered in favor of the plaintiff once 45 days have passed from the hand delivery of the certified copy of this order and after receipt of plaintiff’s written request for entry of a judgment accompanied by a notarized affidavit dated after the 45 days have elapsed indicating that no appeal of this order has been taken by either party and that payment was not made by the defendant as ordered. And it is further ordered that if the defendant is not directly served with the certified copy of this order within six months of the date of this order, then the judgment may not enter without further order of the court.

. The judgment is for her only since plaintiff Schouten defaulted before this court and the arbitrator.

. RPAPL 711 (2).

. Capital letters are used in the original complaint.

. While plaintiffs alleged in their complaint a loss of $1,734, this court is not limited to this artificial figure in assessing damages. Rather, the court finds that the tenant was given notice in the complaint that the landlord was suing for rent from May through September of 2006. The total rent due for those five months totaled $2,100. Based on the uncontroverted evidence in this proceeding heard following remand after appeal, the court finds the tenant paid $1,375 rent during that time span.

. The applicable statute of limitations for this contract action is six years. CPLR 213 (2).

. Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 816 (2003) (citations omitted). The court made it clear that the “mere lapse of time, without a showing of prejudice, will not sustain a defense of laches.” Id.

. In part, the County Court decision was based on a Fourth Department ruling that “[a] Small Claims Part has no equitable powers and cannot grant equitable relief.” Cucinotta v Hanulak, 231 AD2d 904, 905 (4th Dept 1996). The court in Cucinotta actually reversed on two grounds: first, it held that the trial court disregarded clear substantive law; second, it found that County Court exercised improper appellate review since “the order and judgment cannot be sustained on grounds of equity and fair play or on the ground that plaintiff complied with the statute ‘in spirit.’ ” Id. (the appellate briefs clearly show that reversal of both courts was on different grounds); see also TR Constr. v Fischer, 26 Misc 3d 1238(A), 2010 NY Slip Op 50462(U) (Watertown City Ct 2010, Harberson, J.); Cristillo v Drabin, 19 Misc 3d 1140(A), 2008 NY Slip Op 51078(U) (Rochester City Ct 2008, Morse, J.).

. RPAPL 743.

. Such may not be the case with rent control or where rent is covered by a Section 8 federal subsidy.

. See Lemle 58th LLP v Wolf, 20 Misc 3d 1133(A), 2008 NY Slip Op 51713(U), *2 (Civ Ct, NY County 2008, Lebovits, J.) (“the tenant must show that injury or prejudice will result if laches does not bar the lawsuit”); see also Dwyer v Mazzola, 171 AD2d 726, 727 (2d Dept 1991); Morris v Monit Mgt., 222 AD2d 1090, 1091 (4th Dept 1995).

. In addition, a landlord’s review of his or her copy of the rent receipts would be of assistance in preparing any three-day notice to quit or summary proceeding petition and, thus, “adequately apprised defendants as to the grounds upon which it was based, allowing them to prepare a legal defense.” Domen Holding Co. v Aranovich, 1 NY3d 117, 123 (2003); see also L&T E. 22 Realty Co. v Earle, 192 Misc 2d 75, 76 (App Term, 2d Dept 2002) (“[w]hether or not the DSS payment was explicitly earmarked for December 2000 rent, it was at all times clear to landlord that the payment, which was in the amount of the December 2000 rent, was intended to be applied to that rent and not to the arrears, and that payment of the arrears was awaiting the completion of the paperwork for the ‘one-shot deal’ ”).

. The columns in the document listed the money paid each month, as well as a running balance in arrears, and another column pegged to the end of the tenancy back-crediting all past payments, then compiling cumulative rent owed culminating in the $1,734 for which suit was brought. Also before the court, for whatever weight it should accorded, is a note allegedly from the tenant acknowledging she owed some back rent. The landlord asserted during the de novo hearing that the figures were incomplete. However, even if the court were to accept the note as an admission of the tenant, it cannot credit the landlord’s purported amendment without its being adopted as true by the tenant, who did not appear at the hearing on remand, or subject the landlord’s account to cross-examination.

. Real Property Law § 235-e (a). Subdivision (b) of that statute also provides that “[w]here a tenant, in writing, requests that a landlord provide a receipt for rent paid by personal check, it shall be the duty of the landlord to provide the payor with the receipt described in subdivision (a) of this section for each such request made in writing.”

. This was the justification for the law contained in the memorandum which accompanied 1981 NY Assembly Bill A315 (Sponsor’s Mem, Bill Jacket, L 1981, ch 822). The bill was modeled on New York City Housing Maintenance Code (former Administrative Code of City of NY) § D26-41.17.

. Mem of Atty Gen, Bill Jacket, L 1981, ch 822.

. Mem of Kathy A. Bennett, Counsel to State Consumer Protection Board, Bill Jacket, L 1984, ch 16, at 12.

. Snide v Larrow, 62 NY2d 633, 634 (1984) (citations omitted).

. Mem of Atty Gen, Bill Jacket, L 1981, ch 822. This problem was recently noted by Judge Fern Fisher who observed, “[bjecause no penalties *876 are connected with the failure to provide a receipt, there is little encouragement for landlords to comply with rent receipt requirements.” Scherer, Residential Landlord-Tenant Law in New York § 2:64 (Fern Fisher, View from the Bench).

. The first amendment in 1984 brought rent payments made with “any instrument other than the personal check of the tenant” under the statute’s umbrella. L 1984, ch 16, § 1, amending Real Property Law § 235-e. The justification for the addition was that many poor or elderly tenants pay in a manner other than personal check, and thus do not have written proof of payment provided by a cancelled check. Mem of Mary F. Glasheen, Counsel to Secy of State, Bill Jacket, L 1984, ch 16, at 10. The second amendment provided that a landlord must provide a written receipt to a tenant who pays by personal check if the tenant requests such a receipt in writing. While there was opposition to the bill because of fears that it required that the written receipt be given before the check cleared, the bill passed overwhelmingly. There were arguments in favor of a tenant having proof “that the rent was paid in a timely fashion” to counter “unscrupulous landlords” charging a late fee by claiming the rent was not received in time. Letter from Assembly Member Saul Weprin, Bill Jacket, L 1986, ch 848.

. In a memorandum recommending approval of the 1984 amendment, the New York State Division of Housing and Community Renewal noted that “[t]he bill may be more effective if it were to provide some penalty for a landlord’s failure to give a tenant a receipt for payment. In the absence of such a provision the bill may have less impact than intended.” Mem of Div of Housing & Community Renewal, Bill Jacket, L 1984, ch 16, at 17.

. In a summary proceeding, a demand for “ ‘any and all arrears which may be due’ . . . were too indefinite and equivocal to serve as a predicate for a summary eviction proceeding.” J.D. Realty Assoc. v Scoullar, 169 Misc 2d 292, 293 (App Term, 1st Dept 1996).

. Palmieri v Hernandez, 127 Misc 2d 369, 371 (Mount Vernon City Ct 1984, Heisenberg, J.).

. Brinkman v Cahill, 143 Misc 2d 1048, 1049-1050 (Arcadia Just Ct 1989, Russell, J.).

. Gummerson v Strecker, 8 Misc 3d 1030(A), 2005 NY Slip Op 51353(U), *2 (Auburn City Ct 2005, McKeon, J.).

. Reed v Ragsdale, 181 Misc 2d 773, 774 (Newark Just Ct 1999, Chambers, J.).

. DeCarvalhosa v Adler, 57 AD3d 367, 368 (1st Dept 2008).

. One could argue that the distinction is due to the different purposes served by the two proceedings. On the one hand, a summary proceeding is intended to be an expeditious process to address concern for prompt resolu *878 tion of disputes relating to rental of residential or commercial space. Reich v Cochran, 201 NY 450, 453 (1911); Cotignola v Lieber, 34 AD2d 700, 701 (3d Dept 1970). Thus, as it relates to rent, laches may preclude summary relief dispossessing a tenant who currently pays on time based on a stale claim for past-due rent where the tenant is able to show prejudice as well as the other elements of the defense. A & E Tiebout Realty, LLC v Johnson, 23 Misc 3d 1112(A), 2009 NY Slip Op 51705(U) (Civ Ct, Bronx County 2009, Madhavan, J.) (laches granted on summary judgment); Lemle 58th LLP v Wolf, 20 Misc 3d 1133(A), 2008 NY Slip Op 51713(U) (2008); J.D. Realty Assoc. v Jorrin, 166 Misc 2d 175, 179-180 (1995). On the other hand, no such countervailing policy considerations should limit a landlord’s separate right to sue for back rent in a court of competent jurisdiction. Yet, this argument overlooks the fact that back rent in most residential cases rarely exceeds the monetary limit in small claims where costs are less and where there are relaxed rules of procedure and evidence — making it much more “user friendly” for pro se litigants.

. NY City Civ Ct Act § 1805. In 1985, language was added to section 1805 of the various local court acts as “a legislative acknowledgment that this is a necessary power to implement the instruction that the small claims machinery be used to accomplish substantial justice.” Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, NY City Civ Ct Act § 1805, at 292 (internal quotation marks omitted). While the impetus for this amendment was to avoid unjust enrichment by allowing for conditional judgments in small claims actions involving defective merchandise (Mem of Senator James J. Lack, Bill Jacket, L 1985, ch 599), both proponents, such as the New York State Consumer Protection Board, and opponents of the statute recognized it could be read more broadly. Citing the benefits of having explicit statewide authority for such conditional judgments, the Unified Court System lent its support to the change noting that “some small claims courts already follow such a procedure informally.” Letter from Counsel Michael Colodner, Bill Jacket, L 1985, ch 599.

. Uniform City Ct Act § 1804. Importantly, while Supreme Court rules may apply in small claims “so far as the same can be made applicable and are not in conflict with the provisions of [the UCCA]; in case of conflict, the provisions of [the UCCA] shall control.” UCCA 1804.

. Lebovits, Small Claims Courts Offer Prompt Adjudication Based on Substantive Law, 70 NY St Bar J 6 (Dec. 1998) (citations and some internal quotation marks omitted).

. Siegel, NY Prac § 581, at 1005 (4th ed) (internal quotation marks omitted).

. Although a hundred years ago, the Appellate Division, Second Department, held that “an equitable defense does not transform a legal action into an equitable one,” New York & Brooklyn Brewing Co. v Angelo, 144 App Div 655, 656 (2d Dept 1911), a clear statement from the legislature regarding the applicability of equitable defenses in small claims courts would clear up any question on the issue.

. The legislature has amended other statutes to insure quantum meruit applies. See Morris Cohon & Co. v Russell, 23 NY2d 569, 575 (1969) (a claim seeking quantum meruit prays for the reasonable value of services rendered); see also Snyder v Bronfman, 13 NY3d 504, 508 (2009) (“Unjust enrichment and quantum meruit are . . . contracts] implied ... in law to pay reasonable compensation” [internal quotation marks omitted]); Ogletree, Deakins, Nash, Smoak & Stewart v Albany Steel, 243 AD2d 877, 879 (3d Dept 1997) (“Plaintiffs quantum meruit action is essentially an action at law, inasmuch as it seeks money damages in the nature of a breach of contract, notwithstanding that the rationale underlying such causes of action is fairness and equitable principles in a general rather than legal, sense” [internal quotation marks omitted]).

. The Court of Appeals has noted that equitable estoppel “rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury.” Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448 (1958).

. NY City Civ Ct Act § 1804; UCCA 1804; UDCA 1804; UJCA 1804.

. Unlike other local court acts, the New York City Civil Court Act does provide for limited injunctive relief in housing matters. CCA 110; compare UCCA 209.

. Such a limitation is reasonable since pursuant to the small claims act “[a] judgment obtained under this article shall not be deemed an adjudication *881 of any fact at issue or found therein in any other action or court.” UCCA 1808; see Matter of Hellman v Ploss, 46 AD2d 658, 661 (2d Dept 1974); Kitchen v Sothebys, 18 Misc 3d 1132(A), 2008 NY Slip Op 50264(U) (Civ Ct, NY County 2008, Jaffe, J.); compare Moss v Davis, 11 Misc 3d 1060(A), 2006 NY Slip Op 50324(U) (Rochester City Ct 2006, Morse, J.), with Clary v Anson, 21 Misc 3d 1108(A), 2008 NY Slip Op 52006(U) (Poughkeepsie City Ct 2008, Garrity, J.).

. Compare Zenila Realty Corp. v Masterandreal984, 123 Misc 2d 1, 12-16 (Civ Ct, NY County 1984, Dankberg, J.) (“This proceeding and recent decisions discussed in it ‘cry out’ to the Legislature to enact a shortened Statute of Limitations for summary proceedings. Whether it be the three-month period . . . the six-month limitation ... or whatever period absent good cause shown” [citations omitted]).

. Compare Cerio v Charles Plumbing & Heating, 87 AD2d 972 (4th Dept 1982) (“the Statutes of Limitation set forth in CPLR article 2 are matters of substance that apply to proceedings in Small Claims Court”), with 542 Holding Corp. v Prince Fashions, Inc., 46 AD3d 309, 311 (1st Dept 2007) (“claims for back rent. . . accruing more than six years prior to the commencement of this ejectment action are time-barred”).

. The idea of utilizing such a “three-month rule” for back rent is not new. It has been the subject of debate and conflicting court decisions for almost 40 years. The first 20 years of the debate are fully analyzed in Marriott v Shaw, 151 Misc 2d 938 (Civ Ct, Kings County 1991, Friedman, J.). Recently, one court noted that while there is no bright line, “[a]s a general rule, where more than three months’ rent is sought, a presumption is created, shifting to landlord the burden of establishing diligence in bringing the proceeding.” STP Assoc., LLC v Holacek, 23 Misc 3d 1104(A), 2009 NY Slip Op 50576(U), *3 (Nassau Dist Ct 2009, Ciaffa, J.), citing 3 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings § 43.33. Another court invoked a one-year rule. Lemle 58th LLP v Wolf, 20 Misc 3d 1133(A), 2008 NY Slip Op 51713(U), **3 (2008) (“Using its discretion and taking the equities into account, the court determines that petitioner can seek at trial a possessory judgment for rent arrears that accumulated from one year before the petition was filed, or rent owed from April 28, 2007, to date. Any additional rent petitioner alleges respondent owes within the statute-of-limitations period may be sought at trial but is subject to a non-possessory judgment”). Other courts have observed that “an owner cannot forbear from bringing a summary proceeding, allowing the arrearage to mount to a level where the tenant cannot satisfy it, thereby making eviction inevitable. (See, Gramford Realty Corp. v Valentin, 71 Misc 2d 784 [Irving Younger, J.].)” J.D. Realty Assoc. v Jorrin, 166 Misc 2d 175, 180 (1995).

. Subdivisions (3)-(6) of RPAPL 711 would then be renumbered as subdivisions (4)-(7).

. In evaluating the credibility of any witness in this and all cases, this court paid and always pays particular attention to the demeanor and nonverbal communication of anyone under oath because of the recognized limited scope of any appellate review. As noted by the Appellate Division, First Department:
“On a bench trial, the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court’s conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses. This standard applies with greater force to judgments rendered in the Small Claims Part, which is commanded to do substantial justice between the parties according to the rules of substantive law. This provision has been interpreted to mean that in general, alleged errors in the presentation of evidence or pleadings are not reviewable upon . . . appeal as they are not a basis for reversal of a judgment. Because there is ample support in the record, there is no basis to disturb the factual findings made by Civil Court.” Williams v Roper, 269 AD2d 125, 126-127 (1st Dept 2000) (citations and internal quotation marks omitted), Iv dismissed 95 NY2d 898 (2000).